EMR:BM/SSA/KPO
F. #2021R001087

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 22 2025 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

FAUSTIN NSABUMUKUNZI,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

INDICTMENT

Cr. No. **CR-25 0138**
(T. 18, U.S.C., §§ 982(a)(6)(A),
982(b)(1), 1425(a), 1425(b), 1546(a), 2
and 3551 et seq.; T. 21, U.S.C., § 853(p))

SEYBERT, J.

DUNST, M.J.

THE GRAND JURY CHARGES:

## INTRODUCTION

I.   Background on Rwandan Genocide

    1.     Rwanda is a country in east-central Africa. In early 1994, Rwanda had a population of approximately 7 to 8 million people comprised primarily of two ethnic groups: Hutus and Tutsis.

    2.     On or about April 6, 1994, a plane carrying Rwandan President Juvénal Habyarimana was shot down by a surface-to-air missile as it approached the airport servicing the Rwandan capital of Kigali, killing Habyarimana.

    3.     After the president's assassination, members of the Hutu ethnic group in control of the Rwandan government began killing their perceived political opponents, including members of the Tutsi ethnic group.

    4.     Over the subsequent approximately 100 days, hundreds of thousands of people, primarily Tutsis and others perceived to be assisting them, were raped, mutilated and murdered in the Rwandan Genocide. The killers included soldiers, members of militant groups

such as the "Interahamwe," the youth wing of the President's political party, and other Hutu civilians, who used machetes, clubs, guns, and other weapons. Sexual violence and rape were also used as tools of the genocide.

5. The genocide ended after an opposition armed group defeated the Rwandan Army in approximately July 1994.

II. Defendant's Participation in the Rwandan Genocide

6. In 1994, Rwanda was composed of 11 "prefectures," which were each governed by a Prefect. Each prefecture was divided into "communes," which were each administered by a Mayor. Each commune, in turn, was divided into "sectors," which were each administered by a Sector Councilor.

7. In 1994, Kibirizi was a sector within the commune of Nyaruhengeri, which was located within Butare Prefecture, in Southern Rwanda.

8. The defendant FAUSTIN NSABUMUKUNZI was a Hutu, who was born in Rwanda in 1960. In or about April 1994, NSABUMUKUNZI was the Sector Councilor of Kibirizi.

9. Beginning in or around April 1994, the defendant FAUSTIN NSABUMUKUNZI participated in the violence and the genocidal killings of Tutsis. For example:

   a. As Sector Councilor, NSABUMUKUNZI, together with others, held a leadership position and oversaw the violence and killings of Tutsis.

   b. NSABUMUKUNZI set up roadblocks to detect and detain Tutsis when they left their homes. One roadblock was stationed near NSABUMUKUNZI's home.

    c. NSABUMUKUNZI directed groups of armed Hutus to kill Tutsis. For example, on or about April 21, 1994, NSABUMUKUNZI directed a group of armed Hutu men to kill a group of Tutsis who were gathered on the grounds of the administrative office for Nyaruhengeri commune. NSABUMUKUNZI subsequently participated in the violence, including by hitting Tutsis in the head with a club. NSABUMUKUNZI also directed the armed Hutu men to remove dead Tutsi bodies from the administrative office grounds after they were killed.

    d. On another occasion, NSABUMUKUNZI ordered a group of armed Hutus to locations where Tutsis were sheltering and kill them, which the armed Hutus did.

    e. NSABUMUKUNZI facilitated the rape of Tutsi women by Hutu men, by, for example, verbally encouraging Hutu men to rape Tutsi women.

III. Defendant's False Statements

    10. In or about August 2003, the defendant FAUSTIN NSABUMUKUNZI applied to the U.S. Immigration and Naturalization Service ("INS") for refugee resettlement to the United States. As part of the application process, NSABUMUKUNZI was interviewed by an INS officer and asked questions from a Rwandan Questionnaire for Visa Applicants. In response to these questions, NSABUMUKUNZI, among other things, did not disclose his involvement in the genocide; stated that he did not commit any acts of violence or theft against another person or property during the genocide; denied encouraging others to participate in violence or theft against another person or property during the genocide; and denied being an employee of the government of Rwanda before or during the genocide. As part of his application, NSABUMUKUNZI also completed a Sworn Statement of Refugee Applying for Admission to the United States. In this statement, which he signed under penalty of perjury,

NSABUMUKUNZI denied that he had ever committed any crimes; denied he had ever ordered, incited, assisted or participated in the harm of any other person because of the person's race, religion, nationality, ethnic origin, or political opinion; and denied having ever sought entry into the United States or any other immigration benefit by fraud or willful misrepresentation of a material fact.  The refugee application was approved, and, in or about September 2004, NSABUMUKUNZI entered the United States as a refugee.

11.  In or about 2006, the defendant FAUSTIN NSABUMUKUNZI filed an Application to Register Permanent Residency or Adjust Status (Form I-485) with United States Citizenship and Immigration Services ("USCIS").  On the I-485 Application, NSABUMUKUNZI, among other things, denied ever engaging in genocide and denied ever committing a crime of moral turpitude for which he was not arrested.  NSABUMUKUNZI signed the application under penalty of perjury.  The Application to Register Permanent Residency was approved on or about November 14, 2007, and NSABUMUKUNZI was issued an Alien Registration Receipt Card, also known as Permanent Resident Card, Green Card, or Form I-551 card.

12.  In or about September 2009, the defendant FAUSTIN NSABUMUKUNZI filed an Application for Naturalization (Form N-400) with USCIS.  On the Application for Naturalization, NSABUMUKUNZI, among other things, denied ever persecuting anyone because of race, religion, national origin, or membership in a particular social group; denied committing a crime for which he was not arrested; and denied ever giving false information to obtain an immigration benefit or lying to gain entry or admission into the United States.  NSABUMUKUNZI signed the application under penalty of perjury.

13. On or about January 13, 2015, the defendant FAUSTIN NSABUMUKUNZI was interviewed by a USCIS officer in connection with NSABUMUKUNZI's Application for Naturalization. During the interview, which was conducted under oath, NSABUMUKUNZI, among other things, denied ever persecuting anyone because of race, religion, national origin, or membership in a particular social group; denied committing a crime for which he was not arrested; and denied ever giving false information to obtain an immigration benefit or lying to gain entry or admission into the United States. On or about April 27, 2015, NSABUMUKUNZI's naturalization application was denied by U.S. immigration authorities. The application was denied on the grounds that NSABUMUKUNZI had failed to establish good moral character for reasons unrelated to the 1994 genocide.

14. On or about June 21, 2016, the defendant FAUSTIN NSABUMUKUNZI submitted to USCIS a second Application for Naturalization (Form N-400). In his second Application for Naturalization, which was signed under penalty of perjury, NSABUMUKUNZI, among other things, denied ever persecuting anyone because of race, religion, national origin, or membership in a particular social group; denied ever committing a crime for which he was not arrested; denied being part of any group that ever used a weapon against another person; denied ever providing weapons to another person; denied participating in any self-defense group, vigilante group, militia group, or paramilitary group; denied ever being "involved in any way" with genocide, or with killing, hurting, or forcing another person to have sexual contact; and denied ever providing false information to a U.S. government official or lying to gain admission or an immigration benefit. NSABUMUKUNZI's second application for naturalization is currently pending.

15. On or about August 7, 2020, the defendant FAUSTIN NSABUMUKUNZI submitted to USCIS an Application to Replace Permanent Resident Card (Form I-90). With the application, NSABUMUKUNZI submitted photocopies of the front and back of his current Permanent Resident Card. On or about November 6, 2020, a new Permanent Resident Card was issued to NSABUMUKUNZI.

16. On or about March 17, 2023, the defendant FAUSTIN NSABUMUKUNZI traveled from Lome, Togo to Newark, New Jersey, where he presented a refugee travel document and was admitted to the United States as a lawful permanent resident.

17. On or about May 20, 2023, the defendant FAUSTIN NSABUMUKUNZI submitted to USCIS an Application for Travel Document (Form I-131). With the application, NSABUMUKUNZI submitted photocopies of the front and back of his Permanent Resident Card.

## COUNT ONE
(Visa Fraud)

18. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

19. On or about and between November 14, 2007 and May 20, 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FAUSTIN NSABUMUKUNZI did knowingly and intentionally utter, use, attempt to use, possess, obtain, accept, and receive one or more documents prescribed by statute or regulation for entry into and as evidence of authorized stay and employment in the United States, to wit: a lawful permanent resident card or I-551 card, knowing said document was procured by means of one or more false statements and by fraud and was unlawfully obtained.

(Title 18, United States Code, Sections 1546(a), 2 and 3551 et seq.)

## COUNT TWO
(Attempted Unlawful Procurement of Naturalization)

20. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

21. On or about June 21, 2016, within the Eastern District of New York and elsewhere, the defendant FAUSTIN NSABUMUKUNZI did knowingly and intentionally procure and attempt to procure, contrary to law, his naturalization, in that the defendant did knowingly and intentionally make one or more false statements under oath, in a case, proceeding and matter relating to naturalization and citizenship, to wit: NSABUMUKUNZI falsely stated that he had never persecuted anyone because of race, religion, national origin, or membership in a particular social group; had never committed a crime or offense for which he had not been arrested; had never been part of or helped any group or organization that used a weapon against another person; had never been a member of, helped, or participated in any self-defense group, vigilante group, militia group, or paramilitary group; and had never been involved in any way with genocide, or with killing, hurting, or forcing another person to have sexual contact, when, in fact, as the defendant then and there well knew and believed, these statements were false.

(Title 18, United States Code, Sections 1425(a), 2 and 3551 et seq.)

## COUNT THREE
(Attempted Procurement of Naturalization When Not Entitled)

22. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

23. On or about June 21, 2016, within the Eastern District of New York and elsewhere, the defendant FAUSTIN NSABUMUKUNZI did knowingly and intentionally attempt to procure and obtain naturalization and citizenship to which he was not entitled, because at the time of his application for naturalization he could not satisfy the requirements for naturalization, including the requirement that he be a person "of good moral character," as defined in Title 8, United States Code, Section 1101(f)(6), given that he gave false testimony for the purpose of obtaining any benefits under Chapter 12 of Title 8 of the United States Code, and as defined in Title 8, United States Code, Section 1101(f)(9), given that he had participated in the Rwandan genocide in 1994.

(Title 18, United States Code, Sections 1425(b), 2 and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION

24. The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(6)(A), which requires the forfeiture of (a) any conveyance, including any vessel, vehicle, or aircraft used in the commission of such offenses; and (b) any property, real or personal, that: (i) constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of such offenses; or (ii) is used to facilitate, or is intended to be used to facilitate, the commission of such offenses.

25. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

       (d)      has been substantially diminished in value; or

       (e)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(6)(A) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
JOHN J. DURHAM
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

_____
MATTHEW R. GALEOTTI
HEAD OF THE CRIMINAL DIVISION
UNITED STATES DEPARTMENT OF JUSTICE